# Moses J. Neiditz et al. *v.* Morton S. Fine and Associates, Inc.
## (12608)

Peters, C. J., Healey, Shea, Santaniello and Callahan, Js.

Argued March 12—decision released May 20, 1986

*Louis B. Blumenfeld,* for the appellant (defendant).

*Jerome E. Caplan,* with whom, on the brief, were *Jane A. Boyle* and *Leon M. Rosenblatt,* for the appellees (plaintiffs).

SHEA, J. This is an appeal, after certification, from a judgment of the Appellate Court affirming a decision of the Superior Court, which awarded damages to the plaintiffs as a result of the defendant's negligent preparation of a boundary survey of the plaintiffs' land. We granted certification to review the judgment of the Appellate Court on various issues relating to the trial court's (1) finding that the defendant was negligent, (2) award of certain damages, and (3) award of statutory prejudgment interest on these damages. We find error in the Appellate Court's resolution of the last issue only and modify the interest award.

The decision of the Appellate Court more fully describes the underlying facts and procedural history. *Neiditz* v. *Morton S. Fine & Associates, Inc.,* 2 Conn. App. 322, 479 A.2d 249 (1984). Sometime in 1955, the defendant, a professional corporation engaged in the business of land surveying and civil engineering, was asked by the plaintiffs to prepare a perimeter survey of their property located at the northwest corner of South Main Street and New Britain Avenue in West Hartford. At that time the defendant reviewed the appropriate land records, conducted on-site field work and prepared the requested map. In 1972, the plaintiffs desired to obtain a zone change from the town of West Hartford in order to permit the construction of commercial and office buildings and requested that the defendant prepare the necessary map delineating the courses and dimensions of each boundary of the plaintiffs' land. Instead of conducting a new survey, the

defendant utilized the "compilation method" to adjust the map prepared in 1955 to reflect interim highway takings by the state, and enlarged the 1955 map in order to comport with the scale requirements of the zoning board. This 1972 map was certified by the defendant to be "substantially correct" but it contained a notation that no new field work had been undertaken on the property and that the map was based solely on the 1955 survey. The plaintiffs filed their application for a zone change supported by the 1972 map. The application was unconditionally granted on August 22, 1972, and no appeal was taken from such action.

Shortly thereafter, upon further investigation necessary to initiate development of the land, the defendant discovered that its survey inaccurately depicted the shape of the plaintiffs' property. The town of West Hartford deemed this error to be a material change in the plaintiffs' zoning application and voided its earlier approval of the zone change, requiring the plaintiffs to resubmit an application accompanied by an accurate survey. A second application was made with a new site plan prepared by the defendant correcting the error. This second application was granted on January 12, 1973, contingent, however, on compliance with eight conditions involving various design and structural modifications to the proposed development plan of the plaintiffs' property. On June 11, 1973, the second zoning approval became operative after an appeal by a contiguous property owner had been dismissed.

The plaintiffs instituted the present action based on the defendant's negligence and breach of contract[1]

---

[1] Although the plaintiffs did allege a breach of contract by the defendant, the decision of the trial court was based solely on the defendant's negligence in performance of its contract obligations. The parties have not, either before this court or the Appellate Court, raised the breach of contract issue except as the basis for establishing the defendant's duty to exercise reasonable care.

seeking damages suffered as a result of the delay in obtaining the required zoning approval and costs incurred in order to satisfy the conditions that had been imposed by the second approval, no conditions having been initially required. The plaintiffs alleged that they had relied on the defendant's representation that the 1972 survey was "substantially correct" and that the defendant had negligently failed to survey the property accurately and to establish the correct boundaries and topography of the land. The trial court awarded damages to the plaintiffs for the increased costs of developing their property and awarded interest on these damages under General Statutes § 37-3a at the rate of 8 percent for the period from June 11, 1973, the approval date of the second application, to the date of judgment.

From this judgment the defendant appealed to the Appellate Court which found no error in the trial court's conclusions. Upon the granting of certification, the defendant appeals to this court. As we often have recognized, the focus of our review on cases before us on certification is the judgment of the Appellate Court, not of the Superior Court. *Metropolitan District* v. *Barkhamsted,* 199 Conn. 294, 297–98, 507 A.2d 92 (1986); *State* v. *Torrence,* 196 Conn. 430, 433, 493 A.2d 865 (1985).

As it did before the Appellate Court, the defendant claims that the trial court could not have found the defendant negligent in 1972 because no expert testimony was produced as to the standard of care required by a skilled civil engineer of ordinary prudence under similar circumstances. See *Johnson* v. *Flammia,* 169 Conn. 491, 496, 363 A.2d 1048 (1975); *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 400, 363 A.2d 160 (1975); *Ferrie* v. *Sperry,* 85 Conn. 337, 343, 82 A. 577 (1912). The defendant concedes that the plaintiffs' expert tes-

timony adequately supports a finding of negligence based on the defendant's conduct in 1955, but claims that the expert did not establish that the defendant's conduct in 1972 was negligent. As the Appellate Court noted, the plaintiff's expert testified that a land surveyor acting as the defendant did in 1972 would not have been in comformity with the standard of due care required of a registered land surveyor practicing in Connecticut because the defendant had prepared the necessary site plan without going out into the field. The Appellate Court correctly concluded that the evidence sufficiently supported the trial court's judgment that the defendant was negligent in its preparation of the requested survey in 1972.[2]

The defendant also claims that the trial court found negligent conduct that had not been alleged in the plaintiffs' complaint and that, in sustaining the trial court's conclusion, the Appellate Court relied on negligent conduct different from that found by the trial court as well as different from that alleged. As previously stated, the allegation of negligence was that the defendant had negligently failed to make an accurate survey of the plaintiffs' land and to establish its correct boundaries and topography. The trial court found that the defendant was negligent in certifying the 1972 map to be substantially correct and in submitting it to the plaintiffs while being fully cognizant that it was to be used to support an application for a zone change, when it knew or should have known that the 1955 map was inaccurate. We conclude that this finding was not at variance with the allegations of the complaint. It is clear

---

[2] This conclusion also resolves an additional claim of the defendant, raised in its petition for certification and addressed in its brief, that the plaintiffs' action was time barred by General Statutes §§ 52-584 and 52-576 because it was predicated on 1955 conduct of the defendant. Because we agree with the Appellate Court that the plaintiffs adequately established the defendant's negligent conduct in 1972, the action was not time barred.

that the negligence found by the trial court derived from the contract between the parties to prepare accurately the required map. Because the defendant failed to exercise the skill ordinarily expected of a civil engineer in preparing the 1972 survey, the trial court properly concluded that the defendant had performed its contractual obligations negligently. See *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 410, 207 A.2d 732 (1965). As we have recognized, a defendant may be liable in negligence for the breach of duty which arises out of a contractual relationship. *Johnson* v. *Flammia,* supra; *Urban* v. *Hartford Gas Co.,* 139 Conn. 301, 304, 93 A.2d 292 (1952). The trial court's conclusion that the defendant knew or should have known that the 1955 map was inaccurate was not a material variance from the plaintiffs' allegation of negligence arising from the contractual relationship. An engineer acting according to accepted levels of competency in 1972 would have discovered the inaccuracy of the 1955 map. We similarly reject the defendant's contention that the basis for negligence relied upon by the Appellate Court differed in any meaningful respect from that found by the trial court.

The balance of the defendant's claims of error relate to the damages found by the trial court and sustained by the Appellate Court, and to the interest awarded on those damages. The defendant first claims error with respect to the award of damages for the costs incurred by the plaintiffs in satisfying the conditions imposed by the zoning board in its second zone change approval. The defendant claims that it should not be held responsible for these costs because they were not demonstrated to have been the proximate result of its negligence. The gravamen of its claim is that had the initial survey been accurate the eight conditions imposed by the town would have been imposed when

the first zone change was granted. We agree that if the zoning board would have imposed the identical conditions on the plaintiff's development had the initial map been accurate, the costs necessary to satisfy the conditions would not have been proximately related to the defendant's negligence. Under that hypothesis the conditions would have been imposed by the board whether or not the defendant had been negligent. Nothing in the record, however, required the trial court to find that the eight conditions imposed after the second hearing resulted wholly from the relocation and reconfiguration of the buildings made necessary because of the inaccuracy of the first survey map. It was reasonable, therefore, for the trial court, within the exercise of its prerogative as a factfinder to resolve this claim against the defendant. We recognize that a party is liable only for those damages which are the proximate result of his negligence. *Mourison* v. *Hansen,* 128 Conn 62, 66, 20 A.2d 84 (1941). Nevertheless, we agree with the Appellate Court that the costs relating to the conditions imposed could reasonably have been found "causally connected" to the negligence of the defendant in preparing the 1972 map.[3]

The defendant also claims that the award of property taxes for the time period between the first zoning approval and the dismissal of the appeal from the

---

[3] We point out that the law of torts differs from the law of contracts with respect to the applicable causation standard for awarding damages. Under the circumstances of this case, the plaintiffs are entitled to recover all damages proximately caused by the defendant's negligent performance of the contract, whether or not the consequences were reasonably anticipated. *Johnson* v. *Flammia,* 169 Conn. 491, 499, 363 A.2d 1048 (1975); *Mahoney* v. *Beatman,* 110 Conn. 184, 188, 147 A. 762 (1930). In an action founded solely on breach of contract, however, the recovery of the plaintiffs would have been limited to those damages the defendant had reason to foresee as the probable result of the breach at the time when the contract was made. 3 Restatement (Second), Contracts § 351 (1979); Farnsworth, Contracts § 12.14 (1982).

second approval was erroneous. Again the defendant claims that these damages were not incurred as a direct result of its conduct. The defendant asserts that in light of the trial court's finding that there was no evidence that the delay resulted in any loss of rental income to the plaintiff, the plaintiffs would have been unable to recoup the amount of these taxes from a tenant and, therefore, would have had to pay the taxes with or without the delay. Although the plaintiffs did not establish that the delay resulted in a loss of rental income from any particular prospective tenant, they were clearly prevented from developing their land in any way until the second approval became final. Regardless of the trial court's refusal to award lost rental income, the Appellate Court properly sustained the award of property taxes for the period of delay.

The defendant's final claim of error relates to the award of prejudgment interest. The trial court awarded prejudgment interest under General Statutes § 37-3a[4] to the plaintiffs at the statutory rate of 8 percent from June 11, 1973, to the date of judgment, December 3, 1980. The defendant claims, as it did before the Appellate Court, that because the statutory rate of interest was 6 percent until October 1, 1979, when the legislature increased the rate to 8 percent; Public Acts 1979, No. 79-364, § 2; the higher rate of interest should not be applied to the period before the statutory change because to do so would modify its substantive rights retroactively.[5] The Appellate Court concluded that the higher interest rate applied to the entire prejudgment period, concluding that "[i]f whether any interest at all should be awarded as prejudgment damages is optional

[4] In relevant part, General Statutes (Rev. to 1981) § 37-3a provides: "[I]nterest at the rate of 8 per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable . . . ."

[5] The statute was amended again in 1983 to increase the interest rate to 10 percent. Public Acts 1983, No. 83-267, § 1, effective October 1, 1983.

with the trial court, the rate at which it accrues, as set by the legislature, should also be within the ambit of choice of the trial court." *Neiditz* v. *Morton S. Fine & Associates, Inc.*, supra, 332. Although the allowance of prejudgment statutory interest as an element of damages is within the discretion of a trial court; *Bertozzi* v. *McCarthy*, 164 Conn. 463, 467, 323 A.2d 553 (1973); we disagree with the Appellate Court's conclusion that a court has similar discretion with regard to the applicable rate of interest.

As a general rule of construction, statutes which effect "substantial changes in the law" are not to be given retroactive application unless the legislature has expressly so declared. *American Masons' Supply Co.* v. *F. W. Brown Co.*, 174 Conn. 219, 222–23, 384 A.2d 378 (1978); *Michaud* v. *Fitzryk*, 148 Conn. 447, 449, 171 A.2d 397 (1961). The amendment to § 37-3a, raising the statutory interest rate to 8 percent, clearly effectuates a substantial change in the law because debtors then became exposed to greater financial consequences for the "detention of money after it becomes payable." General Statutes § 37-3a. We find nothing in the amendment or its legislative history indicating an intent to authorize the increased interest rate for a period prior to its enactment. The amendment increasing the rate of interest was only prospective in its operation, and was not intended to modify obligations which had already been fixed prior to its enactment.

Fundamental principles of fairness also militate against applying the higher statutory rate retroactively. As the Appellate Court recognized, interest awarded under the statute is intended to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him. *Porter* v. *Clerk of the Superior Court*, 368 Mass. 116, 330 N.E.2d 206 (1975). The statutory rate of interest embodied in § 37-3a presumably reflects

the legislature's view of the rate of interest that would have been obtainable while the money was being wrongfully withheld. During the period following the date when the second zoning approval became final, and its liability for prejudgment interest began to accumulate, the defendant was aware only of the possibility of an award of interest at the then prevailing rate of 6 percent. Similarly, when the legislature increased the statutory rate to 8 percent the defendant could reasonably have contemplated an interest award, bottomed on any further delay, at that rate of interest. To subject the defendant to the higher rate of interest for the period prior to the change, would clearly affect its substantive rights retroactively because, on the effective date of the increase in the statutory rate from 6 percent to 8 percent, the defendant's accrued liability for interest would have been increased by one third. We conclude, therefore, that the award of interest to the plaintiffs at the rate of 8 percent per annum instead of 6 percent per annum from June 11, 1973, to October 1, 1979, was erroneous. Accord *Vincenzi* v. *Cerro,* 186 Conn. 612, 613, 422 A.2d 1352 (1982); *Antinozzi Associates* v. *Arch Fracker Plumbing & Heating Contractor, Inc.,* 39 Conn. Sup. 375, 380–81, 465 A.2d 333 (1983); *Krol* v. *Goldring,* 38 Conn. Sup. 610, 614–15, 458 A.2d 15 (1982); *White* v. *Lyons,* 42 Cal. 279, 284 (1871); *McKeague* v. *Talbert,* 658 P.2d 898, 908–10 (Hawaii App. 1983); *Nabor* v. *Occidental Life Ins. Co.,* 78 Ill. App. 3d 288, 396 N.E.2d 1267 (1979); *Porter* v. *Clerk of the Superior Court,* supra, 208–209; *Rachlin & Co.* v. *Tra-Mar, Inc.,* 33 App. Div. 2d 370, 375, 308 N.Y.S.2d 153 (1970); *Bullock* v. *Boyle,* 1 (Hoffman) N.Y. Ch. R. 294, 300 (1839); contra *Simons* v. *Saaz,* 147 N.J. Super. 143, 370 A.2d 889 (1977); see generally annot., 40 A.L.R.4th 147, 157 (1985).

Accordingly, the judgment is set aside and the case is remanded with direction to render judgment as on

file except that statutory interest be applied at the rate of 6 percent from June 11, 1973, through September 30, 1979, and at the rate of 8 percent from October 1, 1979, to the date of judgment.

In this opinion the other judges concurred.