ELIZABETH BONAN *v.* GOLDRING HOME
INSPECTIONS, INC.
(AC 21210)

Foti, Dranginis and Hennessy, Js.

Argued November 30, 2001—officially released April 2, 2002

*Marylouise S. Black,* with whom, on the brief, were *Robert M. Fleischer* and *Leslie L. Lane,* for the appellant (plaintiff).

*David J. Robertson,* for the appellee (defendant).

*Opinion*

DRANGINIS, J. In this case, the plaintiff, Elizabeth Bonan, appeals from the judgment rendered in her favor following a jury trial. On appeal, the plaintiff claims that she is entitled to a new trial because the trial court improperly (1) restricted her testimony on direct examination, (2) refused to charge the jury on her breach of contract claim or, in the alternative, blended her breach of contract claim with her negligence count in its instructions to the jury, (3) refused to charge the jury on the issue of the defendant's guarantee as set forth in her breach of contract count and (4) instructed the

jury regarding her claim that the defendant violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On December 13, 1994, the plaintiff entered into a written contract to purchase a home in Norwalk for $750,000. Soon thereafter, the plaintiff received a mortgage commitment from National Westminster Bank for $350,000. Pursuant to the loan commitment, the plaintiff was required to provide to the bank, on or before the closing date, a satisfactory report regarding wood destroying insects prepared by a licensed pest control company.[1]

To meet the loan commitments, the plaintiff, on January 4, 1995, entered into an oral contract with the defendant, Goldring Home Inspections, Inc., for it to conduct a visual inspection of the subject property. The defendant did not detect any major problems, and provided the plaintiff with a written inspection report and a satisfactory insect report, both indicating the lack of any visible signs of insect infestation. The plaintiff paid $650 to the defendant for the home inspection. The plaintiff subsequently closed on the purchase of the property on January 10, 1995.

Toward the end of March, 1995, the plaintiff noticed insects swarming in her solarium, which were later discovered to be termites. The plaintiff entered into a contract with OCON, Inc., to remediate the termite infestation. The plaintiff paid $2968 to OCON for its termite work. To treat the termite damage, insulation material and asbestos also had to be removed from

[1] The plaintiff previously hired Total Home Inspection, Inc., to perform a full inspection of the subject property. Although Total Home Inspection, Inc., provided a favorable report about the premises, it did not fill out the necessary forms regarding wood destroying insects.

crawl space in the wall. The plaintiff also had to replace woodwork in the solarium. The plaintiff allegedly discovered other problems with the home that she claims the defendant should have identified during the home inspection.

The plaintiff then filed an action against the defendant, alleging breach of contract, negligence and CUTPA violations. Following a jury trial, a verdict was rendered in the plaintiff's favor on the negligence count only, and damages were awarded to her in the amount of $2968. This appeal followed. Additional facts will be set forth where pertinent to the issues raised.

I

We will first address the second issue raised by the plaintiff regarding the court's refusal to instruct the jury on the breach of contract count, as our resolution of that claim affects our determination of the other issues raised in this appeal.[2]

The plaintiff contends that the court improperly refused to charge the jury on her first count of breach of contract or, in the alternative, that it improperly blended her breach of contract claim with the second count of her complaint, a negligence claim. The plaintiff, therefore, requests a new trial as to her breach of contract and CUTPA claims. We are not persuaded.

The following additional facts are relevant to our resolution of the plaintiff's claim. As previously mentioned, the plaintiff filed a three count complaint against

[2] The defendant asserts that we should not review the breach of contract claim on the grounds that it is inadequately briefed and unpreserved. Specifically, the defendant contends that the claim is unpreserved because the plaintiff failed to take an exception to the charge. We disagree. The plaintiff adequately briefed her claim in compliance with our rules of practice. Moreover, the plaintiff timely filed a written request to charge, thereby preserving her challenge to the jury instructions. See *Murray* v. *Taylor*, 65 Conn. App. 300, 328, 782 A.2d 702, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001).

the defendant, alleging breach of contract, negligence and CUTPA violations. The plaintiff proceeded to trial on those three counts. At the conclusion of the evidence, the defendant sought a directed verdict on all three counts. Although the court did not rule on the motion explicitly, during discussions with the parties it expressed concern about whether the breach of contract count was legally viable and whether it should submit the issue to the jury.[3]

In its charge to the jury, the court instructed the jury to disregard the breach of contract claim. The plaintiff now challenges the following portion of the jury charge, which encompasses the court's instruction to reject the breach of contract count:

---

[3] The following are examples of colloquy between the parties and the court indicating the court's determination that the plaintiff was not entitled to submit the breach of contract claim to the jury. After the defendant presented its arguments in support of its motion for a directed verdict, the court responded: "I'll take it on the paper. . . . I believe she [the plaintiff] goes to the jury on count one and two, which will be blended together. I don't make any real distinction in the charge between the breach of the contract or negligen[t] performance. In other words, they're going to have to determine—I believe, they'll be charged that there was a contract, absent the scope or the duty of the defendant must be determined by the evidence and then—once you determine what his precise duties were, did he not perform the duty at all, which would be breach of contract, or he was negligent performing in that standard of the contract, which would be causation as far as I'm concerned. So, those blend together."

Again, as demonstrated by the following colloquy, during the conversation about the defendant's motion for a directed verdict, the court questioned whether it was appropriate to charge the jury on both the breach of contract and negligence counts:

"Trial Court: What do you say on count one?

"[Plaintiff's Counsel]: On count one, Your Honor, count one is a breach of contract action. I think the case law establishes that?

"Trial Court: Where? A breach in what then? I mean, let's put it this way. What—do you want count one or do you want count two?

"[Plaintiff's Counsel]: Your Honor, I believe, I believe I'm entitled to both counts.

"Trial Court: Then you're going to require an interrogatory to the jury as to whether they're making a finding of count one or count two if we get to CUTPA. Because I don't see how else I can handle it.

"[Plaintiff's Counsel]: If that's what's required."

"Ladies and gentlemen, during the trial, and as I explained to counsel, the first count on breach of contract, I believe, that is—we can cover more clearly for your purposes in the second count, which is the negligen[t] performance of a contract. So, therefore, I don't intend to deliver the first count to you. I don't think it's necessary for a resolution in this particular case, which then means you're getting down to the second— and, as I said to you, the second count, of course, is founded in negligence. So, what we have to do is now switch over to the concept of you have a contract. Of course, you have a contract, an offer, acceptance and consideration. I don't believe there's any question that we did have what we call an oral contract in here."

Although the plaintiff labels her claim as one involving an improper jury instruction, in essence, she claims that the court "sua sponte, and in derogation of the law," rejected the breach of contract count, thereby warranting our plenary review of the matter.[4] We find that the gravamen of the plaintiff's claim is whether the court properly determined, as a matter of law, that she was not entitled to submit the breach of contract count to the jury.

"It is well established that [a] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . [A] trial court should instruct a jury on [every] issue for which there is any foundation in the evidence, even if weak or incredible. . . . The trial court has a duty not to submit any issue to the jury upon which the evidence would not support a finding. . . . Accordingly, the right to a jury instruction is limited to those theories for which there is any foundation in the evidence. . . .

---

[4] The plaintiff also seeks our review of her claim under the general standard for challenged jury instructions, i.e., whether it was reasonably probable that the jury was misled.

In determining whether any such foundation exists, [w]e must consider the evidence presented at trial in the light most favorable to supporting the [party's] request to charge. . . . Additionally, [w]hen . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citations omitted; internal quotation marks omitted.) *Henriques* v. *Magnavice*, 59 Conn. App. 333, 336, 757 A.2d 627 (2000); see also *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 139, 757 A.2d 516 (2000).

We conclude that the court properly declined to instruct the jury on the breach of contract count because, in this case, the plaintiff was not entitled to an instruction on both the breach of contract and negligence counts.

In her first count for breach of contract as set forth in the complaint, the plaintiff alleged that the "[d]efendant *defaulted* in the performance of its Agreement with the plaintiff in that it *failed to perform* the inspection in a skillful, competent and workmanlike manner by *failing to identify*, in the report or otherwise, the existence of substantial and costly problems with the premises. . . ." (Emphasis added.) The plaintiff alleged negligence in the second count of her complaint, stating that "[t]he [d]efendant, in violation and breach of its duty, *failed to exercise* a reasonable degree of care, skill and diligence when it performed the inspection of the premises in that it *failed to identify* and report numerous problems at the [p]remises, including but not limited to the problems described in [count one]." (Emphasis added.)

More significantly, however, in the breach of contract and negligence counts, the damages that the plaintiff claimed she suffered as a result of the defendant's

actions were identical to one another. In the first count, the plaintiff alleged that "[a]s a direct and proximate result of the Defendant's *default,* the plaintiff has been forced to expend considerable sums to correct and repair the problems with the premises which the defendant failed to identify. As a further direct and proximate result of the defendant's *default,* the plaintiff purchased the premises for a purchase price greater than she would have paid had the defendant discovered and reported the problems with the premises described . . . above." (Emphasis added.) The damages that the plaintiff claimed in the negligence count reiterate verbatim those set forth in the breach of contract count, with the exception that she substituted the word negligence for default.[5]

Although the plaintiff was entitled to allege those respective theories of liability, she was not entitled to recover twice for the same damages that arose out of the same transaction. See *Jonap* v. *Silver,* 1 Conn. App. 550, 561, 474 A.2d 800 (1984). Thus, submitting both the breach of contract and negligence charges to the jury in this case would have resulted in the jury improperly awarding duplicative damages to the plaintiff. See id., 562.

*Jonap* v. *Silver,* supra, 1 Conn. App. 550, is instructive. In *Jonap,* the plaintiff filed an action against the defendant for injurious falsehood and invasion of privacy. Following trial, the jury awarded damages in favor of the plaintiff for, inter alia, both invasion of privacy

---

[5] In her negligence count, the plaintiff claimed that "[a]s a direct and proximate result of the Defendant's *negligence,* the Plaintiff has been forced to expend considerable sums to correct and repair the problems with the premises which the defendant failed to identify. . . . As a further direct and proximate result of the Defendant's *negligence,* the plaintiff purchased the Premises for a price greater than she would have paid had the defendant discovered and reported the Problems with the Premises described . . . [previously]." (Emphasis added.)

by appropriation and invasion of privacy by false light. Id., 553. On appeal, this court found that the jury improperly had awarded damages for both invasion of privacy by appropriation and invasion of privacy by false light because the award amounted to a duplication of damages. Id., 561. We concluded that the plaintiff was "not entitled to recover twice for the same elements of damage such as mental distress, harm to reputation, pecuniary loss or resulting unjust enrichment growing out of the same transaction, occurrence or event. . . . Put another way, the plaintiff cannot twice suffer damage to his reputation, mental distress or other harm from this one transaction. Thus, he should not twice recover damages." (Citations omitted.) Id., 561–62.

Similarly, in this case, despite invoking separate theories of liability, the plaintiff cannot recover twice for expending "considerable sums to correct and repair the problems with the premises," and for purchasing the premises for a price greater than she would have paid had the defendant discovered the problems with the home. Accordingly, it would have been improper for the court to submit both counts to the jury when the plaintiff sought to recover twice for the same damages.

The issue still remains, however, whether the court acted in accordance with law and adapted its charge to the issues litigated at trial when it rejected the breach of contract claim as opposed to the negligence count. We begin our analysis by noting that a party may be liable in negligence for the breach of a duty that arises out of a contractual relationship. *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 199 Conn. 683, 688, 508 A.2d 438 (1986). "Even though there may not be a breach of contract, liability may arise because of injury resulting from negligence occurring in the course of performance of the contract." *Johnson* v. *Flammia,* 169 Conn. 491, 496, 363 A.2d 1048 (1975).

"Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so." *Dean* v. *Hershowitz*, 119 Conn. 398, 407–408, 177 A. 262 (1935). "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). In her complaint, the plaintiff alleged that the defendant breached its contract in that it "failed to perform the inspection in a skillful, competent and workmanlike manner. . . ." Those very words implicate negligence principles in that the defendant had a duty to the plaintiff and allegedly failed to perform its duties under the proper standard of care.

Although, the duty that the defendant owed to the plaintiff arose from the contract between the parties, a thorough review of the complaint, record and transcripts reveals that the plaintiff was not seeking damages for breach of that duty per se, but rather for the defendant's negligence in the performance of the contract.[6] That is manifest from the fact that the plaintiff's allegations of liability and damages in the breach of contract count are nearly identical to those contained in the negligence count. Moreover, the evidence presented at trial to establish the breach of contract and negligence claims was the same. In other words, the plaintiff here could not prove a breach of contract without simultaneously proving that the defendant was negligent.

"Just as [p]utting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender . . . putting a contract tag on a tort claim will not change

---

[6] The court also recognized that although the defendant's duty to the plaintiff arose from their contract, the plaintiff, in reality, sought to recover damages resulting from the defendant's negligence.

its essential character." (Citation omitted; internal quotation marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 263, 765 A.2d 505 (2001).[7] In this case, it appears that the plaintiff attempted to give two different names to one claim of negligence. Accordingly, we conclude that under the circumstances of this case, the court properly rejected the plaintiff's breach of contract claim and instructed the jury solely on the negligence count.

To the extent that the plaintiff contends, in the alternative, that the court improperly blended the breach of contract count and negligence count in its instructions to the jury, we further conclude that her claim is without merit.

"Our standard of review concerning preserved claims of improper jury instruction is well settled. . . . A jury instruction must be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Therefore, [o]ur standard of review on this claim is whether it is reasonably probable that the jury was misled." (Cita-

---

[7] Our holding here is limited to the facts of this case, and should not be interpreted to stand for the proposition that a plaintiff cannot bring an action for both breach of contract and negligence on the basis of negligent performance of that contract. To the contrary, the negligent performance of a contract may give rise to an action and recovery in both tort and breach of contract. See 57A Am. Jur. 2d Negligence §§ 119 through 25 (1989). To sustain an action in both tort and contract, however, on the basis of negligent performance of a contract, the plaintiff must allege facts and damages sufficient to maintain those causes of actions separately. See *Youngset, Inc.* v. *Five City Plaza, Inc.*, 156 Conn. 22, 25, 237 A.2d 366 (1968).

tions omitted; internal quotation marks omitted.) *Geary* v. *Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 624–25, 760 A.2d 969 (2000).

The court, in commenting on the defendant's motion for a directed verdict, stated: "I believe [the plaintiff] goes to the jury on count one and two, which will be blended together. I don't make any real distinction in the charge between the breach of the contract or negligence performance. . . . So those blend together."

Although the court stated to the parties that it would blend the breach of contract and negligence counts in its instructions to the jury, a thorough review of the instructions reveals that the court did not intermingle the two counts and thus did not mislead the jury. The court adequately explained to the jury that the breach of contract claim was subsumed by the negligence count. The court then continued to instruct the jury, in great detail, on the elements of negligence. Moreover, the fact that the court continued to instruct the jury solely on negligence further bolsters our conclusion that the jury was not misled.[8] "[J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error." (Internal quotation marks omitted.) *Marchell* v. *Whelchel*, 66 Conn. App. 574, 588, 785 A.2d 253 (2001). We conclude that the court's instructions to the jury were proper and did not mislead the jury.

II

We now address the plaintiff's first claim on appeal that the court improperly restricted her testimony on

---

[8] We further note that the court submitted interrogatories to the jury relating solely to the negligence and CUTPA counts.

direct examination regarding what actions she would have taken had the defendant discovered the termite infestation and other problems with the premises during the home inspection.[9] The plaintiff contends that as a result of the court's limitation of her direct examination, she was precluded from proving her breach of contract claim and is thus entitled to a new trial.[10]

Our conclusion in part I, that the court properly refused to charge the jury on the breach of contract claim, renders moot the plaintiff's evidentiary claim with respect to proving a breach of contract. See *Churchill* v. *Skjerding*, 31 Conn. App. 247, 253, 624 A.2d 900, cert. denied, 226 Conn. 914, 628 A.2d 986 (1993). In light of our conclusion, we need not consider whether the court improperly prevented the plaintiff from presenting evidence in support of her breach of contract claim. See id.

### III

The plaintiff next claims that the court improperly refused to charge the jury on the issue of the defendant's guarantee or disclaimer of warranty as set forth in her request to charge. The plaintiff contends that the court's failure to instruct on that issue negatively impacted the jury's award of damages. We are not persuaded.

The following additional facts are relevant to our disposition of the plaintiff's claim. After inspecting the subject premises, the defendant gave a booklet to the

[9] In support of her claim, the plaintiff refers to the following colloquy:

"[Plaintiff's Counsel]: Now, do you know what you would have done had the inspection revealed termites?

"[Plaintiff]: Yes.

"[Plaintiff's Counsel]: What would you have done?

"[Defendant's Counsel]: 'I'm going to object. That's a hypothetical question.

"The Court: Sustained as to what she would have done."

[10] The defendant argues that we should decline to review the plaintiff's claim because she failed to preserve it adequately for appellate review. We disagree and find that the claim is before this court adequately.

plaintiff entitled "Know the Home You Buy." The booklet contained a guarantee of services and a clause voiding the guarantee if the home was treated by any other entity without the defendant's approval. In her request to charge, the plaintiff asked the court to instruct the jury in pertinent part that the "warranty has no relevance to [her] contract and negligence claims," and that it "may not consider the defendant's disclaimer of warranties as a factor in determining whether or not the defendant is liable to the plaintiff for breach of contract or negligence." The court did not instruct the jury about the guarantee, or warranty, to which the plaintiff excepted.

We reiterate our standard of review for claims of instructional impropriety in appeals not involving a constitutional question. "[T]he court must consider the whole charge and it must be determined . . . if it is reasonably probable that the jury [was] misled . . . . In assessing the adequacy of a charge to the jury, we consider the charge in its entirety, and judge it by its total effect rather than by its individual component parts. . . . We consider whether the instructions are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury. . . . The charge must give the jurors a clear comprehension of the issues presented for their determination under the pleadings and upon the evidence, and must be suited to guide them in the determination of those issues." (Citation omitted; internal quotation marks omitted.) *Murray* v. *Taylor*, 65 Conn. App. 300, 331, 782 A.2d 702, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001).

We conclude that it was not reasonably probable that the court misled the jury by failing to charge on the issue of the defendant's guarantee. The plaintiff sought the aforementioned instruction to clarify to the jury that the guarantee had no bearing on its determination of whether the defendant was liable for breach of contract and negligence. The fact that the jury found that

the defendant was negligent, and accordingly awarded damages to the plaintiff, demonstrates that the jury was not misled by the absence of an instruction regarding the guarantee.

Although the plaintiff now contends that the issue of the guarantee was "crucial to [her] causes of action," she failed to invoke its significance during the trial. The plaintiff did not present evidence to demonstrate that the guarantee supported her claims of wrongdoing, nor did she proffer evidence to refute any limitations to her recovery that the guarantee may have imposed. Moreover, a thorough review of the transcripts reveals that the defendant did not allege during the trial that the guarantee in any way precluded the plaintiff from prevailing on either her breach of contract or negligence claims.[11] Accordingly, any such instruction would have been irrelevant to the issues presented at trial. We therefore conclude that the court properly refused to instruct the jury on the defendant's guarantee or disclaimer of warranty. Although the plaintiff now is dissatisfied with the jury's award of damages, that award was not a result of, or a reflection of, an improper instruction.

## IV

The plaintiff claims finally that the court improperly instructed the jury regarding her CUTPA count.[12] The

---

[11] In fact, prior to the jury charge, the defendant withdrew all of its special defenses regarding the guarantee and limitation of liability.

[12] The court's instruction on the CUTPA count stated in part: "And what I'm going to do is now submit the last count to you for your deliberations and then ask you to answer two interrogatories. It's dealing with what we call the CUTPA, unfair trade practices act, and there's a statute in the state of Connecticut—I've got the forms—[General Statutes §] 42-110b, I believe, which provides that no person—and, of course, the defendant would be a person. It's a corporate person, but it's a person—shall engage in any unfair methods of competition, unfair or deceptive acts or practice in the conduct of any [trade] or commerce—of course, he isn't trade and commerce.

"They have adopted a rule for you to consider. And there's basically three prongs, as we say, whether the practice, without necessarily having being previously considered unlawful, offended public policy as [it has] been established by statute, common law or otherwise.

plaintiff contends that the court's instruction on the CUTPA count was improper because it charged the jury on that claim "in a vacuum," failed to refer "to testimony or exhibits essential to establish what, in law, could constitute an unfair trade practice as a question of fact" and "made no distinction as to the elements of proof required under the theories of contract or negligence." We decline to review the plaintiff's claim.

The plaintiff has failed to preserve her claim for appellate review. Our rules of practice provide that we are not bound to consider claims of error relative to jury instruction unless they are distinctly raised at trial. See Practice Book § 16-20. In this case, the plaintiff excepted to the jury charge solely on the ground that the court had failed to properly instruct the jury that the defendant's "invo[cation] [of] the guarantee against the plaintiff in order to avoid paying under contract or negligence theories" was an unfair trade practice. The plaintiff made no further objection to the charge. More

---

"The second would be whether it was immoral, unethical and oppressive or unscrupulous, and the third was whether it caused substantial injury to the consumers. Those would be the three concepts that you would have to consider as it relates to your finding in this particular case under the third count.

"Ladies and gentlemen, what it is you have to consider that—mix all the evidence and those three prongs, come to the conclusion that which you found the defendant guilty of is a conduct—and unfair conduct in the trade or business of what he was involved in. And you can do that by continuing your deliberations on that.

"Then you're going to have two questions you have to answer. One is, did defendant, Goldring Home Inspections, Inc., through its servants or agent, engage in unfair or deceptive acts or trade practices in dealing with the plaintiff?

"If you answer no, then there is a—you don't have to answer the second one necessarily, but I'd rather ask you—even though it says if the answer's yes.

"Number two. If the answer to interrogatory number one is yes, would the acts of the defendant, Goldring Home Inspections, Inc.—were they intentional or reckless disregard of the plaintiff's, Elizabeth Bonan's, rights? Yes or no. I would amend that and ask you to answer both. So, I want either a check on yes—both yeses or both no, or any combination."

significant to our analysis, however, is the fact that the trial court's instruction on the CUTPA claim is substantially similar to the language set forth in the plaintiff's request to charge.[13]

Practice Book § 16-20 provides in relevant part that "[a]n appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. . . ."

[13] The plaintiff's request to charge on the CUTPA count stated as follows:

"The plaintiff has also asserted a claim against the Defendant under the Connecticut Unfair Trade Practices Act C.G.S. § 42-110a et seq. (CUTPA). Section 42-110a of the Connecticut General Statutes and [§] 42-110b says this: 'Unfair trade practices prohibited. Legislative intent. A, no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce,'; and B says that we should be guided by the Federal Trade [Commission] and federal courts on their interpretation of this law, as there is a similar law in the federal jurisdiction. So, I now come to what federal law says on the subject. And I quote from A-G Foods, Inc. v. Pepperidge Farm, Inc., [216 Conn. 200, 215, 579 A.2d 69 (1990)]. The Federal Trade Commission has stated: '[W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness . . . .' Those are a lot of words, so let's see what those words mean. . . .

"The first requirement of the statute is, did the act or practices of the Defendant offend public policy as established by statute, common law or otherwise? In other words, does this act or acts on their part fall within some established concept of unfairness? The second part of the law is this: Whether or not the act or practices were immoral, unethical, oppressive or unscrupulous and the third part of the law, quoting from the Federal Trade [Commission's] rules: Whether such act or practices cause substantial injury to consumers. Therefore, you must first ask yourselves whether the Defendant, through its servants or agents, engaged in unfair or deceptive acts or trade practices in dealing with the Plaintiff. If your answer to that question is yes, you must then decide whether the acts of the Defendant were intentional or with reckless disregard of the Plaintiff's rights. Intentional means by design or intent. Reckless means heedless disregard of the rights of others, something more serious than negligence or mere carelessness."

"The purpose of the rule is to alert the court to claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Internal quotation marks omitted.) *Berry* v. *Loiseau*, 223 Conn. 786, 814, 614 A.2d 414 (1992).

In this case, the plaintiff failed to alert the court that she had any objection to the CUTPA charge other than with respect to the issue of the guarantee. The court closely followed the plaintiff's request to charge, and the plaintiff failed to except to the instructions on the grounds she now invokes on appeal. Accordingly, the plaintiff failed to preserve her claim properly, and we therefore decline to review it on appeal. See *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 524–26, 656 A.2d 1009 (1995).[14]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] To the extent that the plaintiff also challenges the interrogatories submitted to the jury regarding the CUTPA count, we also decline to review that claim. The plaintiff failed to raise any objection to the form of the interrogatories or to the court's instructions to the jury to answer the interrogatories concerning CUTPA. Moreover, the interrogatories covering the CUTPA count followed verbatim the jury verdict form with interrogatories that the plaintiff had submitted to the court. Therefore, the plaintiff failed to preserve her claim as to the interrogatories. See *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 96–98, 709 A.2d 14 (1998).