*Batchelar v. Interactive Brokers, LLC*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 26th day of September, two thousand eighteen.

Present:     ROBERT A. KATZMANN,
                       *Chief Judge*,
                 ROBERT D. SACK,
                 REENA RAGGI,
                       *Circuit Judges.*

_____

ROBERT SCOTT BATCHELAR,

                        *Plaintiff-Appellant*,

                 v.                                                          No. 17-3120

INTERACTIVE BROKERS, LLC, INTERACTIVE
BROKERS GROUP, INC., THOMAS A. FRANK,

                 *Defendants-Appellees.*

_____

For Plaintiff-Appellant:            WILLIAM BLOSS, Koskoff Koskoff & Bieder, P.C., Bridgeport, CT.

For Defendants-Appellees:       GARY J. MENNITT, KEVIN BROST, Dechert LLP, New York, NY.


Appeal from the United States District Court for the District of Connecticut (Bryant, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** in part.

Plaintiff-Appellant Robert Scott Batchelar appeals from a final judgment entered by the district court (Bryant, *J.*) following the dismissal of his initial complaint, the denial of his motion calling for the recusal of the district judge, and the denial of his motion to amend or vacate the judgment in order to allow him to file an amended complaint. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We first address the district court's denial of Batchelar's recusal motion, which we review for abuse of discretion. *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008). The basis proffered for the recusal motion is that the defendants' law firm is among those which has represented an insurance company for which the district judge's spouse has served as an executive and general counsel. Batchelar concedes that there has been no actual impropriety, but he nevertheless contends that recusal is necessary because he has identified a single case in which the district judge was recused in light of another law firm's work on behalf of the same insurance company. That slender reed cannot support the weight that Batchelar places on it. At most, Batchelar has raised "remote" and "speculative interests" such that "disqualification is not required." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992).

Turning to Batchelar's claims against the defendants, we review the dismissal of Batchelar's complaint *de novo*, *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013), while we review the district court's decision to deny a motion to alter or amend a judgment for abuse of discretion, *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 120 (2d Cir. 2010). Pursuant to a Customer Agreement governed by Connecticut law, Batchelar held a margin

2

account with Defendant-Appellee Interactive Brokers, LLC ("Interactive Brokers"), an online brokerage firm that generally executes trades at its customers' direction. Defendant-Appellee Interactive Brokers Group, Inc. ("Interactive Brokers Group") is Interactive Brokers' parent company and the employer of Defendant-Appellee Thomas Frank, who had responsibility for Interactive Brokers' liquidation algorithm. According to Batchelar, that algorithm was flawed such that when it was triggered by the value of the collateral in his margin account falling below a certain threshold, the algorithm executed a series of unfavorable trades that caused him pecuniary harm. In turn, Batchelar brought three causes of action against the defendants, each of which was subsequently dismissed. *See Batchelar v. Interactive Brokers, LLC*, No. 15 Civ. 1836, 2016 WL 5661980 (D. Conn. Sept. 28, 2016).

Batchelar's first cause of action was against Interactive Brokers for breach of contract. That claim was properly dismissed because the Customer Agreement did not require Interactive Brokers to liquidate Batchelar's account using any particular methodology, nor was it required to do so in a manner favorable to Batchelar. Rather, the Customer Agreement delegated broad authority to Interactive Brokers, providing as follows in relevant part:

> If at any time Customer's account has insufficient equity to meet Margin Requirements or is in deficit, [Interactive Brokers] has the right, *in its sole discretion*, . . . to liquidate all or any part of Customer's positions in any of Customer's [Interactive Brokers] accounts . . . at any time and *in any manner* and through any market or dealer, without prior notice or margin call to Customer.

Joint App. 79 at ¶ 11(D)(i) (italics added, emphasis otherwise removed). Exercising that authority did not breach the Customer Agreement.

Batchelar's second cause of action was against all three defendants for negligence. The district court dismissed the negligence claim against Interactive Brokers as "duplicative" of the contract claim. *Batchelar*, 2016 WL 5661980, at *5. Under Connecticut law, however, "the negligent performance of a contract may give rise to an action and recovery in both tort and

3

breach of contract." *Bonan v. Goldring Home Inspections, Inc.*, 68 Conn. App. 862, 872 n.7 (2002); *see also Short v. Conn. Cmty. Bank, N.A.*, No. 09 Civ. 1955, 2012 WL 1057302, at *16 (D. Conn. Mar. 28, 2012) ("In general, Connecticut law permits contract and tort claims to coexist." (collecting cases)). Thus although "there may not be a breach of contract" for the reasons discussed *supra*, nevertheless "liability may arise because of injury resulting from negligence occurring in the course of performance of the contract." *Johnson v. Flammia*, 169 Conn. 491, 496 (1975).

The proposed First Amended Complaint plausibly alleges that Interactive Brokers liquidated Batchelar's account by selling the positions held therein at prices that exceeded those that third parties were then receiving in the same market. Whether a negligence claim may lie on those facts depends in part on whether "the defendants' duty to the plaintiff[] arose exclusively out of the contractual relationship," or whether the mere undertaking of the actions involved imposed a duty regardless of whether a contract existed. *Ulbrich v. Groth*, 310 Conn. 375, 405 n.28 (2013). This inquiry in turn may require an analysis of whether Connecticut law imposes a duty on Interactive Brokers in the absence of a contract, *see Sic v. Nunan*, 307 Conn. 399, 407-08 (2012) (laying out the test for determining duty under Connecticut law), and whether imposing such a duty would impermissibly "enlarge the scope of the promisee's undertaking beyond that in his contract," *Dean v. Hershowitz*, 119 Conn. 398, 409-10 (1935). The district court did not engage in these analyses. We therefore vacate the dismissal of Batchelar's negligence claim with respect to Interactive Brokers and remand for reconsideration.

As regards Frank, the negligence cause of action was dismissed for two independent reasons. The district court first held that Batchelar had not identified a duty owed to him by Frank, and, even assuming *arguendo* that there was such a duty, it held that Batchelar had not

4

pled sufficient facts to establish that it had been breached. *Batchelar*, 2016 WL 5661980, at *5. Subsequently, Batchelar's motion to amend or vacate the judgment was denied with respect to his negligence claim against Frank because the district court found that his proposed amendments to his complaint were futile. Although we agree that Batchelar initially failed to plead sufficient facts to establish Frank's negligence, we conclude that Batchelar's proposed First Amended Complaint is not necessarily futile.

The first justification offered by the district court for the dismissal of the negligence claim against Frank was that Batchelar had failed to offer any authority to support the existence of "a common law duty to develop, design, code, maintain, and test [the liquidation algorithm] with the ordinary skill and standards expected of a professional in the industry." *Id.* (internal quotation marks omitted). That is an unduly stringent view of what was required of Batchelar. The test for the existence of a legal duty in Connecticut "entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." *Sic*, 307 Conn. at 407-08 (internal quotation marks omitted). Batchelar was not required to identify and provide authority to support a specific common law duty owed by Frank under the first prong of that test. Instead, Batchelar only had to allege that Frank did not exercise "that degree of care which a skilled [professional] of ordinary prudence would have exercised under the same or similar conditions." *Johnson*, 169 Conn. at 496.

Batchelar's initial complaint was nevertheless properly dismissed because, as explained by the district court, it lacked "a single factual allegation suggesting a breach . . . beyond the sole

allegation that a 'programming error' existed" in the liquidation algorithm for which Frank was responsible. *Batchelar*, 2016 WL 5661980, at *5. Yet that deficiency was cured by Batchelar's proposed First Amended Complaint, which fleshed out the ways in which flaws in the liquidation algorithm caused it to sell off Batchelar's position at prices that appear to have been disproportionate to the market, and, thus, give rise to an inference of negligence. The proposed First Amended Complaint thus adequately addressed the problems identified by the district court and there is no apparent basis for the district court's determination that such amendments were futile.

Even so, we cannot go so far as to say that Batchelar has adequately pled a negligence claim against Frank because neither the parties nor the district court have engaged in the requisite public policy analysis. In evaluating "whether public policy suggests the imposition of a duty," Connecticut courts look to four factors: "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." *Ruiz v. Victory Prop., LLC*, 315 Conn. 320, 337 (2015) (internal quotation marks omitted). That analysis is entirely absent from the record before us. Moreover, Batchelar's cause of action against Interactive Brokers Group is based on a *respondeat superior* theory in light of that company's employment of Frank, such that Interactive Brokers Group's potential liability is derivative of Frank's potential liability. The viability of Batchelar's negligence claim against Interactive Brokers Group is therefore also unclear. Accordingly, we vacate the dismissal of Batchelar's negligence claims against Frank and Interactive Brokers Group and remand for further consideration.

6

Lastly, Batchelar's third cause of action was against Interactive Brokers for what Batchelar terms "commercially unreasonable liquidation." This claim was properly dismissed because Batchelar has failed to cite any authority demonstrating that such a cause of action exists under Connecticut law. Batchelar argues that a duty to liquidate margin accounts in a commercially reasonable manner stems from Connecticut's adoption of Article 9 of the Uniform Commercial Code, *see generally* Conn. Gen. Stat. § 42a-9-101, *et seq.*, but we have squarely rejected the notion that Article 9 applies to collateral held in margin accounts in light of the robust federal regulatory regime governing such accounts, *see Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 704-07 (2d Cir. 1998). In addition, his reliance on the case law of other jurisdictions is unavailing as it sheds no light on Connecticut common law.

We have considered the parties' arguments on this appeal. For the reasons set forth above, we **AFFIRM** the dismissal of Batchelar's breach of contract and commercially unreasonable liquidation claims and the district court's denial of Batchelar's recusal motion; and we **VACATE AND REMAND** for further consideration of Batchelar's negligence claims.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK